**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **ARON D. STITH, individually and by and through his mother, LINDA WILKINS** )<br>)<br>)<br>)<br>)<br>    **Plaintiff,** )<br>)<br>    **v.** )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>)<br>    **Defendant.** )<br>) | **CIVIL NO. 3:08CV678** |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Aron D. Stith, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner terminating his Supplemental Security Income payments ("SSI").  The Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ") that Plaintiff's disability, as defined by the Social Security Act ("the Act") and applicable regulations had indeed ended.

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 10) be DENIED; that Defendant's motion for summary judgment (docket no. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff, then a child, represented by his mother, protectively filed for SSI and was found to be disabled as of December 1, 1993 due to deficient cognitive functioning and attention deficit hyperactivity disorder ("ADHD"). (R. at 13, 332-33.) On May 30, 2000, the Social Security Administration ("SSA") notified Plaintiff that he was no longer disabled due to medical improvement, and that his benefits would therefore cease. (R. at 13, 332-33.) The determination was upheld upon reconsideration.[2] (R. at 13.) Plaintiff requested a hearing in 2001; however, his file was apparently misplaced by the SSA until January 24, 2006. (R. at 13.) On September 11, 2006, accompanied by counsel, he testified before an ALJ. (R. at 13, 53-54, 330-78.) On February 21, 2007, the ALJ issued a decision finding that Plaintiff's disability ended as of May 30, 2000 because Plaintiff did not have at that juncture an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 as required for him to continue to receive benefits. (R. at 24-33.) The Appeals Council subsequently denied Plaintiff's request for review, making

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to discontinue benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standards were applied in evaluating the evidence. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the

3

ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of the claimant's medical history is required in order to determine whether a claimant under the age of eighteen continues to be disabled. 20 C.F.R. § 416.994a(b). The first step in the sequence is to determine whether there has been a medical improvement in the claimant's condition. 20 C.F.R. § 416.994a(b)(1). A "medical improvement" is any decrease in the medical severity of an impairment which was present at the time of the most recent favorable decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994a(c). This decision is called the comparison point decision ("CPD"). If there has been no medical improvement since the CPD, the analysis ends and the claimant is found to remain disabled and entitled to continued benefits. Id. If there has been medical improvement, the second step requires the claimant to prove that the impairment considered at the time of CPD still meets or equals the severity of the listed impairment it met or equaled at that time. 20 C.F.R. § 416.994a(b)(2). If the claimant's impairment does not still meet or equal the severity of the listed impairment, the ALJ will proceed to the third step. Id. At the third step, the claimant has an opportunity to prove that, based on all of his impairments, including any that he did not have at the time of the CPD, he remains disabled. 20 C.F.R. § 416.994a(3).

A claimant under the age of eighteen is considered disabled if that individual suffers from a medically determinable physical or mental impairment which results in marked and severe functional limitations, and is expected to result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(I). In evaluating whether a minor claimant is

4

disabled, the ALJ must consider whether the claimant has engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. § 416.924(a). If a claimant's work equals SGA and is more than an unsuccessful work attempt, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. 20 C.F.R. § 416.924(b). If the claimant establishes that he did not engage in SGA, the claimant must prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.924(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. Id. If a child suffers from a severe impairment or combination of impairments, then the ALJ must finally determine whether the child's impairment meets, medically equals, or functionally equals an impairment listed in Appendix 1, Part 404, Subpart P, and lasts, or is expected to last, for twelve months or result in death. 20 C.F.R. § 416.924(d)(1). In assessing the functional limitations caused by the impairments, the ALJ examines a child claimant's limitations in six areas of development and functioning in order to determine whether he has "marked" limitations in two domains[3] of functioning, or an "extreme" limitation in one domain.[4] 20 C.F.R. § 416.926a(a). The six relevant domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4)

---

[3] Domains are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

[4] A "marked" limitation is defined as one that seriously interferes with a child's (in the appropriate age range of the claimant) ability to function in that area. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is defined as one that renders a claimant incapable of meaningful function in a particular area. 20 C.F.R. § 416.926a(e)(3).

5

moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a)(1).

## IV. ANALYSIS

The ALJ began his decision by noting that the most recent favorable decision finding that Plaintiff was disabled was a determination dated November 14, 1994. (R. at 16.) That finding constituted the CPD. (R. at 16.) At the time of the CPD, Plaintiff had ADHD as well as deficient cognitive functioning, and the impairments were found to functionally equal the relevant Listings. (R. at 16-17.) However, the ALJ found at step one that medical improvement had occurred as of May 30, 2000. (R. at 17.) In addition, at step two, the ALJ found that as of May 30, 2000, Plaintiff's ADHD and deficient cognitive functioning no longer met, medically equaled, or functionally equaled the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.) Specifically, the ALJ found that while Plaintiff's ADHD and deficient cognitive functioning resulted in marked limitation in the domain of interacting and relating with others, it resulted in less than marked limitation in acquiring and using information and in attending and completing tasks, and no limitation in the remaining three domains of functioning. (R. at 18-23.) Proceeding to step three, the ALJ concluded that Plaintiff continued to experience the severe impairments of ADHD and diminished cognitive functioning, as well as the additional severe impairment of emotional disturbances, but none of these impairments, singularly or in combination, met, medically equaled, or functionally equaled any of the listed impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23-33.) With respect to the impairments, the ALJ concluded that while the Plaintiff had marked limitation in interacting and relating with others, and less than marked limitation in acquiring and using information and in attending and completing tasks, he experienced no limitation in the remaining three domains of

functioning. (R. at 30-32.) Accordingly, the ALJ concluded that Plaintiff's disability ended as of May 30, 2000, rendering him ineligible for benefits beyond that date. (R. at 33.)

Plaintiff moves for a finding that he continues to be disabled and is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that the ALJ: (1) improperly discredited an October 26, 2006 Wechsler Adult Intelligence Scale-Third Edition test ("WAIS-III test"); (2) erred by considering a November 1, 2000 Wechsler Intelligence Scale for Children-Third Edition test ("WISC-III test") in isolation; (3) failed to find Plaintiff disabled as an adult based upon the listed condition for adult mental retardation; and (4) failed to include all of Plaintiff's limitations in the hypothetical question to the vocational expert ("VE"). (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 4-11.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-18.)

**1.    Plaintiff contends that the ALJ improperly discredited the October 26, 2006 WAIS-III test.**

Plaintiff asserts that the ALJ was required to accept the results of the October 26, 2006 WAIS-III test because Dr. Sprecher, the psychologist who administered the test, indicated in her report that the results were valid. (Pl.'s Mem. at 4-5.) The regulations provide that "[t]he interpretation of the test is primarily the responsibility of the psychologist or other professional who administered the test," and when an ALJ does not rely on a test score, he/she is to explain the reasons for not doing so. 20 C.F.R. § 416.926a(e)(4)(iii).

In the October 26, 2006 WAIS-III test, Plaintiff was found to have a verbal IQ of 75, a performance IQ of 70, and a full scale IQ of 70. (R. at 320-21.) Such scores placed Plaintiff in the borderline range of intelligence and were lower than his scores from the November 1, 2000 WISC-III test which had placed Plaintiff in the low average range of intelligence. (R. at 321, 124.) Dr. Sprecher stated in her written evaluation that Plaintiff's WAIS-III scores were believed to be an accurate assessment of Plaintiff's intellectual ability. (R. at 321.) However, in the diagnostic rationale section of her written evaluation, she noted that Plaintiff might have scored higher if he were more motivated, explaining that Plaintiff "did not appear to take much interest in this exam as he made some phone calls during the interview and mental status examination." (R. at 322.)

In considering the October 26, 2006 WAIS-III test, the ALJ observed that although Dr. Sprecher had found the scores to be valid, she had also qualified her evaluation of the test's validity by stating that Plaintiff might have scored higher if he were more motivated. (R. at 29.) Based upon Dr. Sprecher's qualification, and for the further reason that the October 26, 2006 WAIS-III test results conflicted with the November 1, 2000 WISC-III results, where the 2000 test results were more timely for the purposes of evaluating whether Plaintiff was disabled in May 2000 and indicated that Plaintiff had achieved higher scores, the ALJ discredited the October 26, 2006 WAIS-III test results. (R. at 29.)

The ALJ provided a sufficient explanation of his reasons for not relying on the October 26, 2006 WAIS-III test; and his reasons for doing so were based upon the interpretation of the test by the psychologist who administered it. Accordingly, Plaintiff's claim that the ALJ improperly discredited the October 26, 2006 WAIS-III test lacks merit.

**2.     Plaintiff contends that the ALJ erred by considering the November 1, 2000 WISC-III test in isolation.**

Plaintiff contends that the ALJ's conclusion that Plaintiff had "less than marked limitation in acquiring and using information" is not supported by substantial evidence because the ALJ improperly considered the November 1, 2000 WISC-III test in isolation, in violation of the regulations. (Pl.'s Mem. at 5-7.) The regulations provide that the ALJ shall not rely on any one test score, alone, stating "[n]o single piece of information taken in isolation can establish whether [a claimant has] a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. §§ 416.926a(e)(4)(I), 416.924a(a)(1)(ii).

The November 1, 2000 WISC-III test indicated that Plaintiff had a verbal IQ of 92, a performance IQ of 79, and a full scale IQ of 84. (R. at 124.) The scores placed Plaintiff in the low average range of intelligence. (R. at 124.) The ALJ considered the scores in concluding that Plaintiff had "less than marked limitation in acquiring and using information." (R. at 30.) He further considered, but ultimately discredited, the October 26, 2006 WAIS-III test results, as noted above. (R. at 30.) The ALJ also noted that the Plaintiff testified that, although he is very deficient in math and reading, he could make correct change, go shopping independently, tell time, and read street signs as well as a newspaper, and further that he enjoyed playing cards and games such as bingo, Connect Four, and Memory. (R. at 27, 30.)

It is clear that the ALJ conducted a sufficient analysis of Plaintiff's ability to acquire and use information, and that the ALJ relied on more than just the November 1, 2000 WISC-III test in concluding that plaintiff had less than marked limitation in this domain of functioning as of the review date. Accordingly, this Court recommends a finding that the ALJ's conclusion that

Plaintiff had less than marked limitation in acquiring and using information is supported by substantial evidence.

3.  **Plaintiff asserts that the ALJ failed to find Plaintiff disabled as an adult based upon the listed condition for mental retardation.**

Plaintiff also contends that he should be considered disabled as an adult because he meets the listing for adult mental retardation as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff is currently an adult. (R. at 17.) However, on May 30, 2000, when Plaintiff's disability benefits ceased, he was eleven years old and a "school-age child" as defined by the regulations. See 20 C.F.R. §§ 416.926a(g)(2). At the time of his hearing before the ALJ, he was seventeen and an "adolescent" as defined by the regulations. Id. The only issue before the ALJ was whether Plaintiff's disability ceased as of May 30, 2000 pursuant to 20 C.F.R. § 416.994a(b), which pertains to children, not adults. Accordingly, Plaintiff's claim that the ALJ failed to find Plaintiff disabled as an adult is without merit.

4.  **Plaintiff asserts that the ALJ failed to include all of Plaintiff's limitations in the hypothetical question to the vocational expert**.

Plaintiff argues that the ALJ erred by posing a hypothetical to the VE that did not include Plaintiff's intelligence testing results. (Pl.'s Br. at 9-10.) In the case of an application for adult benefits, the Commissioner must show that the plaintiff can do other work, given his or her Residual Functional Capacity ("RFC"),[5] age, education, and work experience. 20 C.F.R. §

---

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

404.1520(g). Frequently, a VE testifies regarding the work a claimant can perform, as well as to whether such work is available in the economy. The ALJ's function is to pose hypothetical questions to the VE that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments. Walker, 889 F.2d at 50. Accordingly, the ALJ's hypothetical will be valid if the limitations included are supported by substantial evidence in the record.

In this case, however, although a VE testified, the testimony of the VE was not relevant. As earlier noted, the only issue before the ALJ was whether Plaintiff's disability ceased as of May 30, 2000 based on medical improvement as defined in 20 C.F.R. § 416.994a(b). The regulations do not require the use of VE testimony to evaluate a child's initial or continuing claim for disability benefits. See 20 C.F.R. §§ 416.924, 416.994a. Nor did the ALJ rely on the testimony of the VE in concluding that Plaintiff's disability ended as of May 30, 2000. Accordingly, Plaintiff's claim that the ALJ posed an improper hypothetical question to the VE is also without merit.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 10) be DENIED; that Defendant's motion for summary judgment (docket no. 12) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Richard L. Williams and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                           /s/
                                      DENNIS W. DOHNAL
                                      UNITED STATES MAGISTRATE JUDGE

Date: September 22, 2009
Richmond, Virginia